IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Habeeb Abdul Malik, #231677,<br><br>              Plaintiff,<br><br>vs.<br><br>Jon E. Ozmint, Director of SCDC; and<br>Janice Phillips, Health Care Authority,<br>SCDC; Eileen Delaney, Nurse<br>Practitioner III, SCDC; Vaughn<br>Jackson, Major, SCDC; FNU Thomas,<br>Food Service Coordinator, SCDC;<br>all sued in their individual and official<br>capacities,<br><br>              Defendants. | Civil Action No. 8:07-387-RBH-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment [Doc. 30] and the plaintiff's motion for a preliminary injunction [Doc. 17]. The plaintiff alleges that the defendants, in various ways, have violated his First and Eighth Amendment rights.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574

F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A pro se complaint, "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (U.S. 1976). A court may not construct the petitioner's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

2

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

The plaintiff has pled the following claims: (1) deliberate indifference to his hemorrhoids and constipation (Eighth Amendment); (2) delay in providing him a special, high-fiber diet as recommended by the dietary supervisor (Eighth Amendment); (3)

3

interference with the plaintiff's ability to receive his eyeglasses (Eighth Amendment); (4) interference with his special diet by Defendant Thomas, acting in retaliation for prior grievances made by the plaintiff (Eighth Amendment); (5) infringement of his religious beliefs by not bringing him meals at the proper times during his period of fasting (First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000 cc-1); and (6) infringement of his religious practice to wear a "kufi" (Eighth Amendment and the RLUIPA 42 U.S.C. § 2000 cc-1).  (Compl. at 5-14.)

The plaintiff has abandoned the claim related to his eyeglasses, as he concedes that it has been resolved.  (Pl. Resp. Summ. J. at 15.)  As this claim was the sole basis for his motion for a preliminary injunction [Doc. 17], that motion should be denied.

## I.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

As an initial matter, the defendants generally argue that the plaintiff's claims are all unexhausted except for his deliberate indifference claim and, therefore, they should be dismissed.  It is true that the Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a Section 1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such  administrative remedies as are available are exhausted.

In *Porter v. Nussle,* 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.  *Id*. at 525-26.  Further, exhaustion must occur prior to the filing of the lawsuit or it must be dismissed.  *See Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005).  A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983. *Woodford v. Ngo*, 126 S.Ct. 2378, 2386 (2006).

4

The Court will address the exhaustion arguments in the context of each claim, as it is relevant.

## II.    DELIBERATE INDIFFERENCE

The plaintiff first alleges that the defendants were deliberately indifferent to his hemorrhoids and constipation.  The plaintiff argues that they insisted on ineffective treatment of those conditions, refused to prescribe him certain medications, delayed examination by a specialist, and refused to implement the recommendations of that specialist.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.  *Id.* at 104.

"Deliberate indifference is a very high standard." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999).  In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id*. (citation omitted).  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  *See Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986).  In other words, the plaintiff must show, objectively, that he had a serious medical need, and, subjectively, that the defendants were deliberately indifferent to it.

Although the United States Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). Furthermore, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga.1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975) ("The affidavits submitted to the District Court reflect that Russell was under constant medical supervision from the time of his arrival at Botetourt. Questions of medical judgment are not subject to judicial review.").

As to objective element, the defendant contends that the plaintiff's hemorrhoids do not constitute a serious medical need. A serious medical need is one that poses a substantial risk of serious injury to health and safety. *See Young v. City of Mount Ranier*, 238 F.3d 567, 576 (4th Cir. 2001). The Fourth Circuit has further defined "serious medical need" as a medical need "sufficiently serious . . . to require medical treatment." *Brice v. Virginia Beach Correctional Ctr.*, 58 F.3d 101, 104 (4th Cir.1995). In addition, while there is no clear definition of what constitutes a serious medical need, "the Eighth Amendment embraces the treatment of medical conditions which may cause future health problems." *Harden v. Green*, 27 Fed. Appx. 173, 177 (4th Cir. 2001) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

Notwithstanding the defendants' contention to the contrary, by any one of these measures, the plaintiff's hemorrhoids and constipation are a serious medical need. He has averred that they cause him substantial pain and discomfort. (See generally Pl. Ex. 1.) It is undisputed that they required medical treatment, including medications and a referral to a specialist. (See Alewine Aff. at 33-4.) And, genuine issues of fact exist as to whether his hemorrhoids caused other complications, including internal hemorrhoids. *Id*. Accordingly, the plaintiff has established the objective element of his claim to show a serious medical need.

As to the subjective element, the plaintiff contends that the defendants were deliberately indifferent to his condition, notwithstanding the fact that he received treatment. The plaintiff argues that the defendants were indifferent in four ways: (1) they insisted on a course of treatment even after it proved ineffective; (2) they refused to prescribe Zelnorm simply because it was "too expensive;" (3) they delayed in referring him to an outside specialist; and (4) refused to implement the recommended treatment of the specialist. In other words, the plaintiff admits that he was not "ignored," but that the treatment was so inadequate that it rose to the level of deliberate indifference.

The Court agrees with the cases cited by the plaintiff holding that, even where attention and care is given to an inmate, if it is grossly inadequate or incompetent then it may rise to the level of deliberate indifference. *See Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000.); *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997); *see also Miltier*, 896 F.2d at 851.

But, in this Circuit the inadequacy is not enough. The attention or treatment has to be "so grossly incompetent [or] inadequate" as to "shock the conscience or to be intolerable to fundamental fairness." *Id*. It can not be said that a reasonable jury could conclude that the care given the plaintiff, in this case, was inadequate to that degree, if inadequate at all. The Court will address each way in which the plaintiff contends the defendants' response was shockingly inadequate.

First, the plaintiff contends that the defendants persisted with a course of treatment in spite of his complaints that the treatment was ineffective. The record reveals that the defendants were far more responsive with their treatment. The plaintiff first complained of hemorrhoids and constipation in May 2004. (Alewine Aff. ¶ 4.) On June 3, 2004, the plaintiff was diagnosed with hemorrhoids and was provided "appropriate medications," including Anusol and Anusol suppositories. (Alewine Aff. ¶ 4 & Attach at 31.)

On September 2, 2004, the plaintiff was again seen based on his request for a low cholesterol/low sodium diet. *Id*. at 30. The plaintiff believed that the regular food was

aggravating his hemorrhoids. *Id*. The nurse practitioner found that his cholesterol was normal and that there was "no justification for diet change." *Id*.

Then on November 19, 2004, the plaintiff was again seen for complaints of blood in his stool. *Id*. at 29. The medical records reflect that he had been previously prescribed a stool softener, which the plaintiff complained was "less effective." *Id*. Accordingly, the medical staff took a stool sample and observed "scant amount of blood." *Id*. The plaintiff denied cramping, dark tar like stools, or bloody emfsts." *Id*. The plaintiff was given more suppositories, colace, a "portable sitz bath" and metamucil, at his request. *Id*.

On May 19, 2005, the plaintiff again received treatment from the defendants for complaints of bleeding during his bowel movement but stated that as a result of the colace and metamucil he "no longer had to strain to have a stool." *Id*. at 25.

Thereafter, on June 3, 2005, the plaintiff was approved for an outside consultation with a gastroenterologist. *Id*. ¶ 5. On August 1, 2005, Dr. John W. Popp with the Columbia Gastrointestinal Endoscopy Center performed a colonoscopy, at which time a polyp was removed and a diagnosis of internal hemorrhoids was made. *Id*. ¶ 6 & Attach at 33-40. Dr. Popp recommended "local treatment for the hemorrhoids as needed." *Id*. Dr. Alewine has sworn that the plaintiff received all required and recommended care. *Id*. ¶ 6.

This undisputed evidence eliminates all issues of fact as to whether the defendants doggedly recommended the same treatment in the face of evidence that it was not working – they did not. The evidence demonstrates that the defendants were repeatedly responsive to the plaintiff's complaints, offering a variety of treatments from medications, to sitz baths, to removal of a polyp. No reasonable jury could conclude that the treatment was so inadequate and unresponsive as to shock the conscience.

Next, the plaintiff contends that the defendants' treatment was shockingly inadequate because they refused to prescribe him Zelnorm. The plaintiff has not offered any evidence as to precisely what medical benefits Zelnorm produces. Assuming, without deciding, that Zelnorm is even relevant to the plaintiff's condition, the Court does not believe that the defendants were deliberately indifferent for not prescribing it, as a matter of law.

8

First, the plaintiff is not entitled to the treatment of his choice.  "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).  Second, Dr. Alewine has sworn that Zelnorm "was not medically necessary to treat the Plaintiff's conditions." (Alewine Aff. ¶ 6.)  The plaintiff has produced no evidence to the contrary.

The plaintiff, however, has averred that he was told on numerous occasions, by the defendants, that he would not be prescribed Zelnorm because it was "too expensive."  It is true that an allegation that medical treatment decisions were guided by inappropriate considerations, such as monetary incentives or an intent to punish the plaintiff, is sufficient to state a claim for deliberate indifference. *See, e.g., Chance v. Armstrong*, 143 F.3d 698, 704 (2nd Cir. 1998) (holding that where plaintiff alleged that doctors recommended a less expensive treatment not on the basis of medical views, but solely because of monetary incentives, such allegation of an ulterior motive was sufficient to state a claim for deliberate indifference); *Sereika v. Patel*, 411 F. Supp. 2d 397, 408 (S.D.N.Y. 2006).

Other than his own verified allegation, however, the plaintiff has no evidence of such a response by the defendants.  The plaintiff simply cannot prevail on an allegation that defendants were inappropriately seeking to save money where his assertions "that the defendants based medical treatment decisions on cost or other inappropriate concerns is entirely unsupported in the record." *Sereika*, 411 F. Supp. at 408.  While a court has an obligation to read a *pro se* party's supporting papers liberally, a pro se litigants's "'bald assertion[s],' completely unsupported by evidence, are not sufficient to overcome a motion for summary judgment." *Id*. (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).  The plaintiff, as the nonmoving party, "must come forward with specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Even more critically, the Court is persuaded by the Eastern District of Virginia's consideration of whether concern over medical costs can form the basis for a deliberate

indifference claim.  That court stated, "While inmates are entitled to adequate medical care under the Eighth Amendment, they are not entitled to the best and most expensive form of treatment."  *Taylor v. Barnett*, 105 F. Supp. 2d 483, 489 n.2 (E.D. Va. 2000).  The court went on to acknowledge that "[i]t is an unfortunate fact of modern life that cost considerations must enter into the equation for virtually every person seeking medical treatment, not just inmates."  *Id*.  The court noted "that the Eighth Amendment does not forbid prison officials from considering cost in determining the appropriate course of treatment so long as the treatment does not put the prisoner at risk of serious injury and the decision was not made with deliberate indifference."  *Id*.  "It only becomes unacceptable if prison officials make health care decisions solely upon cost considerations without any medical rationale."  *Id*.  To the Court, this is a reasonable balance.

Here, even if the plaintiff's allegations are true, it cannot be said that medical decisions were made "solely upon cost considerations" and with deliberate indifference.  *See id*.  The plaintiff was repeatedly examined, prescribed medications, and sent to a specialist who performed a beneficial medical procedure.  The Court has no evidence as to the expense of Zelnorm, but the aforementioned efforts are not consistent with defendants who are trying to save all cost at the expense of the health of the plaintiff – especially not to a shocking degree.  No reasonable jury could conclude differently.

Next, the plaintiff argues that the long delay in sending him to an outside specialist creates a genuine issue of fact as to deliberate indifference by the defendants.  Delay in treatment certainly can constitute an act of deliberate indifference.  *See Estelle*, 429 U.S. at 104-105 (finding that intentional delay in providing necessary medical care to seriously ill inmate can constitute deliberate indifference and thus violate the Eighth Amendment).  Here, however, there is no actionable delay.  The defendants were universally responsive to the plaintiff throughout 2004.  The plaintiff was examined on at least three occasions regarding his hemorrhoids and constipation.  (Alewine Aff. at 29-31.)  He never contends that he asked to see a specialist but was denied.  Although the plaintiff complains that it was over a year before they sent him to a specialist, the plaintiff has not submitted any

evidence either that it was necessary to have seen one earlier or that there was any additional injury caused by the alleged delay.  No reasonable jury could conclude on the evidence before the Court that the defendants delayed any necessary treatment.

Lastly, the plaintiff argues that the defendants did not administer the treatment recommended by the specialist.  The plaintiff contends that the specialist recommended "appropriate medication, sitz baths, and diet." (Pl. Resp. Summ. J. at 8.)  The plaintiff has produced no evidence of such recommendations and the medical notes of the specialist do not reflect those specific recommendations.  (Alewine Aff. at 33-40.)  The notes simply indicate, "Local treatment for his hemorrhoids is advised as needed." *Id*. at 37. Notwithstanding, as described above, the treatment that the plaintiff contends was recommended by the specialist was essentially the treatment that the defendants had offered the plaintiff all along, including medication and sitz baths.  (Alewine Aff. ¶ 4 (medications) & Attach at 29 (sitz bath).)  There is certainly no recommendation by the specialist to prescribe Zelnorm.  Accordingly, the plaintiff has failed to establish the subjective element of his claim that the defendants were deliberately indifferent. The claim should be dismissed.

## III.    First Amendment Retaliation Claim

The plaintiff next contends that Defendant Thomas, Director of Food Services at Kirkland Corrections Institution, retaliated against him in violation of the plaintiff's First Amendment right to file grievances. Specifically, the plaintiff complains that Defendant Thomas refused to provide the plaintiff with his medically prescribed, high-fiber diet for over a year and gave him smaller portions of food.  The plaintiff was placed on a high-fiber diet January 12, 2006.  (Pl. Ex. 10.)  He did not start receiving that diet, however, until January 23, 2007.  (Pl. Ex. 11.)  The plaintiff alleges that Defendant Thomas refused to provide the diet in retaliation for various complaints and grievances made against Thomas (Pl. Exs. 5), which the plaintiff believes have affected the defendant's bonus.  As far as the Court can tell, however, the plaintiff's first grievance concerning this special diet was not filed until August 14, 2006, nearly 8 months after the plaintiff contends he should have been receiving

11

the diet. (Pl. Ex. 11.) That grievance was resolved in favor of the plaintiff based upon that grievance. *See id.*

Claims of retaliation are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994). To establish a claim for retaliation the plaintiff must show: (1) a retaliatory act that either violates some constitutional right of an inmate or constitutes punishment for the exercise of a constitutional right, *see Adams*, 40 F.3d at 75; (2) that he suffered some adverse impact or actual injury, *see American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir.1993); and (3) but for the retaliatory motive of the defendant, the incident would not have occurred. *See Scott v. Kelly*, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000).

As to the first element, the plaintiff has not identified either a constitutional right of that was violated or one for which he was punished for exercising. He does not have a constitutionally protected right to participate in a grievance procedure, voluntarily offered by the state. *See Adams*, 40 F.3d at 75. So the alleged conduct of Thomas cannot be considered punishment for the exercise of a constitutionally protected right. *Id*. Additionally, the plaintiff does not have a constitutional right to a certain type, quantity, or quality of food. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prisoners have a right only to "adequate" food. *Id*. It need not be either tasty or even appetizing. *See Williams v. Berge*, 102 Fed. Appx. 506 (7th Cir. 2004) (serving "moldy" raisans and "rancid" peanut butter). Smaller portions or a failure to provide a special diet cannot satisfy the first element of a retaliation claim unless such provisions either prove inadequate or rise to the level of cruel and unusual punishment in violation of the Eight Amendment. *See Henderson v. Commonwealth of VA,* 2008 WL 204480, at *4 (W.D. Va. January 23, 2008.) The plaintiff has produced no evidence that the meals were inadequate or that it constituted cruel and unusual punishment. The Court will discuss this point in greater detail regarding the actual injury element of the plaintiff's claim. Accordingly it does not appear that the plaintiff can

satisfy the first element of his retaliation claim. *See id. Henderson v. Commonwealth of VA,* 2008 WL 204480, at *4 (W.D. Va. January 23, 2008.)

But even if the plaintiff can establish the first element of his claim, he has not produced any evidence of actual injury. *See ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir.1993). A plaintiff alleging that government officials retaliated against him in violation of her constitutional rights must demonstrate that she suffered some adversity in response to her exercise of protected rights. *See id; Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134, 1140 (4th Cir.1990) (plaintiff asserting First Amendment whistle-blower claim under § 1983 "must show that alleged retaliatory action deprived him of some valuable benefit."). A "chilling effect" on the plaintiff's willingness to exercise his constitutional rights is sufficient to constitute actual injury. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Wicomico County*, 999 F.2d at 786.

The plaintiff, however, has alleged no chilling effect whatsoever. In fact, his own evidence is replete with grievances and complaints, which show no concern over the threat of retaliation. (Pl. Exs. 1-11.) Moreover, the plaintiff has neither alleged nor produced any evidence suggesting or demonstrating that he suffered physical injury from the allegedly smaller portions or the non-fiber diet. The plaintiff has simply stated in summary fashion that defendant Thomas was attempting to "starve" the inmates. While it should be noted that smaller portions were being provided (Ex. 9), there is no evidence as to the size of those portions and certainly no evidence that the portions were less than adequate or causing any physical harm.

Concerning the fiber diet, the plaintiff has not produced any evidence from which a reasonable jury could conclude that the diet he was receiving caused him physical injury. Such a contention is not reflected in the medical records. In fact, the plaintiff does not even really allege as much. Moreover, the plaintiff, himself, waited eight months from the time he was prescribed the diet before complaining. (See Pl. Ex. 11.) The defendants

13

responded to that grievance and ensured that the plaintiff was receiving the proper diet.[1]
*Id.*

For a lack of actual injury, the plaintiff's retaliation claim must fail.[2]

## IV.   KUFI RLUIPA CLAIM

The plaintiff contends that the South Carolina Department of Correction's ("SCDC") Policy, which prohibits him from wearing his kufi out of his cell, substantially burdens his free exercise of religion under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1. A Kufi is "a close-fitting brimless cylindrical or round hat." *Merriam-Webster's Dictionary*, http://www.merriam-webster.com/dictionary/kufi. The defendants admit the Kufi Policy but argue that the plaintiff, as a Maximum Security Unit ("MSU") inmate, is housed in his cell 23 hours a day, where he is always permitted to wear his kufi. (Jackson Aff. ¶¶ 1, 6-7.) The plaintiff argues that even the 1-hour period where he is unable to wear his kufi constitutes a substantial burden on the practice.

### A.   Exhaustion

As an initial matter, the defendants contend that this claim is unexhausted. The grievance related to this issue was rejected for the plaintiff's alleged failure to specify a precise date in the grievance. (See Pl. Ex. 16.) The defendants' grievance policy requires that a grievance be filed within 15 days of the alleged incident. (Pl. Ex. 17 § 14(a).) The plaintiff concedes that a specific date is necessary in most grievances to ensure compliance

---

[1] Defendant Thomas actually contends that the plaintiff was given the high fiber diet starting January 12, 2006, as soon as Medical instructed Food Services to do so. (Thomas Aff. ¶ 6.) The plaintiff obviously contends differently and has submitted evidence in support. (Pl. Ex. 11.) While the Court cannot resolve the factual discrepancy, it is of no moment, because the plaintiff has not created an issue of fact as to whether he suffered any actual injury.

[2] The defendants contend that this claim is unexhausted. The record, however, indicates that the claim was, in fact, resolved favorably to the plaintiff. (Pl. Ex. 11.) "Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." *Ross v. Bernalillo*, 365 F.3d 1181, 1189 (10th Cir.2004) *abrogated on other grounds; see also McGrath v. Johnson*, 67 F. Supp. 2d 499, 510 (E.D. Penn.1999) (finding exhaustion complete when a grievance was resolved in the prisoner's favor and there was no basis for him to appeal); *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1106 (N.D. Cal.2002) (finding plaintiff was not required to exhaust further administrative appeals when he "had received all the relief that the prison administrative appeal system could provide").

with that rule. (Pl. Brief at 21.)   The plaintiff, however, argues that he did not need to specify a date because, by the defendants' own grievance policy, he was not complaining about a specific incident but rather a policy, namely the one prohibiting his ability to wear a kufi. (Pl. Ex. 17 §§ 14(a) & (g).) The plaintiff appears correct that an exception to the 15-day time limit requirement arises when the grievance concerns a policy or procedure. *Id*. § 14(g).

To properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," – rules that are defined not by the PLRA, but by the prison grievance process itself. *Jones v. Bock* 127 S.Ct. 910, 922 (2007) (quoting *Woodford*, 126 S. Ct. at 2384). The prisoner must use "all steps that the agency holds out, and do[] so properly . . . ." *Woodford,* 126 S. Ct. at 2385 (emphasis in original).  Accordingly, the plaintiff was required to specifically adhere to the defendants' grievance policy.

The plaintiff may, in fact, be correct about the procedure – that no date was required. But, there is no evidence that the defendants had an opportunity to deal with an interpretation of their own policies.  Actually, the defendants did interpret their policy – to require the plaintiff to include a specific date (See Pl. Ex. 15); the opportunity which they lacked was an occasion to formerly consider the plaintiff's counter interpretation.  Although he alleges as much, the plaintiff has not produced any evidence that he formally brought the issue to the attention of the defendants.  The Court believes that *Woodford* compels the conclusion that the plaintiff must be considered to have *not* properly exhausted this claim, so long as the defendants believed he did not comply with their procedures and he never afforded them any opportunity to reconsider.  The Court is unaware of any precedent squarely on point, however.

The Court, therefore, finds that the claim is unexhausted and should be dismissed without prejudice.

**B.    Merits of the RLUIPA Claim**

To the extent the district court concludes that the claim is in fact exhausted, the Court could not recommend a grant of summary judgment on the merits of the plaintiff's claim. Section 2000cc-1(a) of the RLUIPA provides as follows:  No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. *See* 42 U.S.C. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  § 2000cc-5(7)(A). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." § 2000cc-2(a).

As the parties concede, the initial burden is on the plaintiff to establish that the policy is a substantial burden to the exercise of his religious beliefs. *See* 42 U.S.C. § 2000cc-2(b). If the plaintiff establishes the prima facie existence of such a substantial burden, the defendants shall bear the burden of persuasion to prove that any substantial burden on the plaintiff's exercise of his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b).  By its terms, the RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs. 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.").

As to his initial burden, the plaintiff has produced evidence that wearing his kufi "at all times" is a part of his Muslim Faith and a belief truly held.  (Pl. Decl. ¶¶ 3-4; Pl. Opp. Mot. Summ. J. at 17.)  In response, the defendants have spent much of their efforts emphasizing evidence that wearing a kufi is not a central tenant of the plaintiff's faith.  (Shaheed Aff. ¶

16

5.)  It is now clear, however, that the RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion.  *See* 42 U.S.C. § 2000cc-5(7)(A); *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005); *Smith v. Ozmint*, 444 F. Supp. 2d 502, 506 n.4 (D.S.C. 2006).  Accordingly, since the plaintiff has established that wearing a kufi at all times is a part of his personal practice and interpretation of the Muslim faith, the defendants may not attack the relative importance of that tenet to the religion, objectively.  *See Cutter*, 544 U.S. at 725 n.13. The RLUIPA does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity.  *Id*.  The defendants, though, have not contested the plaintiff's sincerity as to the belief nor put forward any evidence that would tend to undermine it.

The defendants bear the burden, therefore, to demonstrate that their policy prohibiting inmates from wearing a Kufi outside of their cell (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest.  *See* 42 U.S.C. § 2000cc-1(a).  The defendants have not met that burden.

The defendants have put forward evidence that the policy serves the compelling interest of security, insofar as a kufi provides a place for inmates to hide weapons and other contraband.  (See Jackson Aff. ¶ 6; Shaheed Aff. ¶ 6.)  The Fourth Circuit agrees that "maintaining order, discipline and safety in prisons" are "compelling governmental and penological interests of."  *Hines v. South Carolina Department of Corrections*,  148 F.3d 353, 358 (4th Cir. 1998).  Accordingly, the defendants have met the first prong of their burden under the RLUIPA.

The defendants, however, have made no argument nor produced any evidence that the Kufi Policy is the least restrictive means.  And, the plaintiff makes persuasive arguments that it is not.

The defendants make literally a one sentence argument concerning this prong: "Importantly, the restrictions are imposed only when the Plaintiff is outside of his cell, which is generally no more than one hour per day."  (Mem. Supp. Mot. Summ. J. at 13.)  This

sentence, however, while an indication that the policy is certainly a restrictive means to police contraband, it says nothing about whether the policy is the *least* restrictive means. The plaintiff's arguments suggest that it is not.

First, the plaintiff states that it would be no burden at all for guards to look under the kufi prior to exiting his cell and before returning. The plaintiff contests that it is small and easily removed. (Pl. Resp. Summ. J. at 19-20.) Second, the plaintiff has produced evidence that MSU inmates are already subject to being strip searched "prior to exiting and entering their cells." (Pl. Ex. 15 at 18.) The plaintiff argues, therefore, that peering under his kufi in the context of a full strip search is no extra burden or difficulty.[3]

Whether the defendants have persuasive reasons why such suggestions are not workable, the Court does not know because none have been offered. And, while the Court is required to show deference to the judgments and perspectives of prison administrators, *see Cutter v. Wilkinson,* 544 U.S. 709, 723 (2005); *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999), the Court cannot show any deference to a judgment which the defendants have not explained.

The plaintiff has at least created a genuine issue as to whether the defendants are currently using the least restrictive means to ensure inmates do not smuggle contraband and weapons under their kufis.[4]

---

[3] The plaintiff also argues that other inmates are allowed to wear knitted sweater caps, hooded jackets, and hats outside of their cells. (Pl. Ex. 14 at 8.) As far as the Court can tell, the policy identified by the plaintiff does not apply to inmates, like himself, who are housed in the MSU. *See id.* The MSU is a "specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of the general population" and, therefore, require more "intense levels of supervision and monitoring." (Def. Jackson Aff. ¶ 3.) Accordingly, what is permissible and safe for general population inmates is not necessarily relevant to what is safe for MSU inmates.

[4] The Court agrees with the plaintiff that the cases relied upon by the defendants in support of the constitutionality of the Kufi Policy all predate the RLUIPA, which has imposed the highest scrutiny level to policies which burden religious practice.

18

### C. Immunity from Suit

The defendants next argue that they there is no cause of action under the RLUIPA against them in their individual capacities and, further, that qualified immunity shields them from suit. While the Fourth Circuit does not appear to have decided it, the Court agrees with the defendants and the Eleventh Circuit Court of Appeals that the defendants cannot be sued in their individual capacities under the RLUIPA. *See Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007) ("Consequently, we conclude that section 3 of RLUIPA-a provision that derives from Congress' Spending Power-cannot be construed as creating a private action against individual defendants for monetary damages."). Since the defendants are not liable individually, then no qualified immunity analysis is necessary. *See Aziyz v. Tremble*, 2008 WL 282738, at *4 (M.D. Ga. January 31, 2008) ("This Court need not decide, therefore, whether the Magistrate Judge was correct in concluding that Plaintiff's rights under RLUIPA were violated, or whether the Magistrate was correct in concluding that Defendants were entitled to qualified immunity.")

Contrary to the defendants' additional argument, however, the plaintiff "may pursue an *official capacity* suit against the defendant[s] . . . for 'appropriate relief.'" *Smith*, 502 F.3d at 1275; *see also* 42 U.S.C. §§ 2000cc-2. The phrase "appropriate relief" in the RLUIPA "encompasses monetary as well as injunctive relief." *Smith*, 502 F.3d at 1271. Critically, the RLUIPA allows for a plaintiff to seek relief in the event there is a violation by a "government," which term is defined in the statute as including, inter alia, any "person acting under color of state law." 42 U.S.C. § 2000cc-5(4)(A)(iii); *Smith*, 502 F.3d at 1275. Accordingly, the defendants are liable to the plaintiff, potentially, in their official capacities, if the claim is found to be exhausted.

### V. RLUIPA MEAL CLAIM

Lastly, the plaintiff complains that Defendant Thomas violated the RLUIPA by not timely delivering his morning and evening meals during Ramadan and his period of fasting. The plaintiff specifically claims that his fast lasts from "dawn to Sunset" during Ramadan (Pl. Ex. 13 §§ 4, 9, 9.1), and that Defendant Thomas would bring his morning meal after

19

dawn and his evening meal before sunset.[5]  The plaintiff argues that these acts imposed a substantial burden on his ability to participate in the fast.  The Court disagrees.

The defendants did not prohibit the fast, either by policy or otherwise.  Obviously, the plaintiff is suggesting that the acts of Defendant Thomas had the *effect* of prohibiting the fast, but the Court is unpersuaded.  First, there is no allegation or evidence that the plaintiff ever broke fast.  While the plaintiff states that "any consumption of food or drink at these times would nullify the fast," he never indicates that occurred.  In other words, the practice was not burdened and the plaintiff suffered no injury.  The plaintiff does not even contend that he had difficulty fasting as a result.  He does not allege how often the meals were tardy or early or in any way attempt to describe the effect of those occurrences on his ability to participate in the religious practice.  No jury could measure it.

Second, the allegations on their face do not even reflect a burden.  For instance, he claims to have been burdened in his fast by meals arriving *before* sunset.  And while the plaintiff, according to his faith, could not have consumed such a meal at the time of its arrival, the plaintiff has submitted no evidence or argument that he could not have waited and consumed the meal *after* sunset.  The plaintiff simply has not produced any evidence creating a genuine issue as to whether he has met his initial burden to show that his fast was "substantially burdened."

While the plaintiff may have had some claim for inadequate food, although unlikely, the plaintiff has not produced any evidence of an RLUIPA claim.[6]

_____

[5]  Defendant Thomas does not actually prepare the food or deliver it to the inmates. (Thomas Aff.¶ 3.)  He is the Food Service Director.  *Id*. ¶ 2.

[6]  The defendants also contend that this claim is unexhausted.  The grievance was returned to the plaintiff because he exceeded the one page attachment limitation.  (See Pl. Ex. 19.)  The plaintiff concedes as much but argues that it was necessary to do so in order to preserve his grievance in necessary detail.  As stated, the plaintiff is required to comply with the procedural rules of the defendants.  *Woodford*, 126 S. Ct. at 2384.  He did not.  There is no evidence that he ever attempted to submit an amended grievance that complied with the policy.   The claim, therefore, is unexhausted.

## CONCLUSION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment should be GRANTED [Doc. 30].  Specifically, the Court recommends that all claims should be dismissed *with prejudice*, except for the plaintiff's RLUIPA claim related to the Kufi Policy, which is unexhausted.  That claim should be dismissed *without prejudice*.  If, however, the district court concludes that the claim is actually exhausted, it is recommended that summary judgment be DENIED as to it.  Additionally, the plaintiff's RLUIPA Meal Claim, related to meals during his fast, may alternatively be dismissed *without prejudice* for failure to exhaust.  It is further recommended the plaintiff's motion for a preliminary injunction [Doc. 17] is DENIED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge


February 13, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).